On October 10, 1938, the defendant Jones sold and transferred, by a written instrument, to J.D. Newman and L.F. Middleton, for the price and consideration of $80, cash, a steel or iron tramroad bridge across Anacoco Creek in Vernon Parish; in the act of sale and transfer, defendant made the usual warranty of title customarily recited in cash deeds covering the sale of real estate, and also made the following special agreement of warranty:
"And I hereby bind and obligate myself, my heirs, executors, and administrators to defend any suit or action in law or equity that may be instituted by any person, firm or corporation, setting up claim to the property hereinabove described, and in the event should the said purchasers or myself be unsuccessful in said court proceeding in such event, I bind myself, my heirs, executors, and administrators to pay all costs attendant to said suit or any damages that may be decreed as due and owing to the said claimants of said property on account of demolishing or removal of said bridge hereinabove described at and when same may be decreed as being the property of other *Page 712 
persons, and not that of my own or my said vendees, J.D. Newman and L.F. Middleton."
On October 17, 1938, J.D. Newman and L.F. Middleton entered into a written contract or agreement with the plaintiff Field for the latter to demolish and remove the bridge to Lake Charles, Louisiana, and the latter to purchase said material at the price and sum of $10 per gross ton of 2,240 lbs. as the material was delivered at Lake Charles, a certain percentage to be retained for the payment of the cost of demolishing and removing; with the further provision that upon fulfillment of the contract and full payment, the said Newman and Middleton agreed to convey to Field, his heirs or assigns, by warranty deed, the said bridge material or property.
Under this contract, Field proceeded to demolish the bridge and to remove the material to Lake Charles; as he was proceeding with his work and had demolished about 98% of the bridge and had removed about 50% of the material to Lake Charles, his operation was stopped by the filing of a suit against him, Newman and Middleton by the Kirby Lumber Corporation, it claiming to own the bridge and, alleging that they, the present plaintiff, Newman and Middleton, were trespassers on its property. The Lumber Corporation sought damages against the defendants, in solido, in the sum of $1,000 as the value of the bridge. This suit was filed in Calcasieu Parish as Field, the present plaintiff, one of the alleged tort-feasors, was a resident of that Parish.
In that suit, Field and the other two defendants answered setting up the sale of the bridge by Jones, the present defendant, to Newman and Middleton, and by the latter to Field, and alleged the warranty under the sales or contracts and agreements, and all three called the present defendant in warranty to defend the suit. Jones excepted to the calls in warranty on the ground that such calls in warranty were not permissible in actions of trespass or tort, and also excepted to the jurisdiction of the Court, contending that he was a resident of the Parish of Vernon. Jones' exceptions were referred to the merits.
Pending the trial of this suit on the merits, on March 27, 1939, Newman and Middleton, for the price and consideration of $150, sold, transferred, assigned and conveyed to Field all of their interest in and to the bridge as well as all of their right of action of warranty, including the right to sue Jones for damages occasioned to them arising out of the purchase of the bridge from him; in this transfer, Field released the said Newman and Middleton from any responsibility or liability under the former agreement between them and also under this act.
On December 21, 1939, after a trial on the merits on October 2, 1939, the trial judge rendered a judgment in favor of Kirby Lumber Corporation and against Field, Newman and Middleton, in solido, for the sum of $1,000, as the value of the bridge demolished and removed by the defendants, said judgment to bear 5% interest from judicial demand, which was December 2, 1938, together with all costs of the suit. The trial judge dismissed the call in warranty against Jones for the reason that the defendants were trespassers and could not call Jones in warranty to defend their trespass. This judgment was not appealed by any of the parties and became final.
The present suit was filed by Field against Jones in which he sets up the various transactions and the suit of the lumber corporation, and seeks to recover from defendant Jones under the warranty which he made to Newman and Middleton and which the latter transferred to him, the amount of the judgment, interest and cost which he paid the lumber corporation, amounting to the sum of $1,152.49, plus certain items of expense connected with the suit, such as attorneys' fees, travelling expenses, watchman for the bridge, surveying the properties of defendant and lumber corporation for the defense of the suit and loss of materials and profit, the total amount of his claim being the sum of $1,862.49.
Defendant Jones filed an exception of no right or cause of action, which was referred to the merits. He then filed a plea of res adjudicata, which was overruled. He then filed an answer in which he alleged that the bridge which he sold to Newman and Middleton belonged to him and was located on his land.
The trial judge, on trial of the merits, rendered a judgment in favor of the plaintiff and against Jones for the sum of $1,152.49, the alleged amount of the judgment, interest and costs which plaintiff claimed that he was forced to pay the Lumber Corporation. Both plaintiff and defendant appealed, plaintiff seeking an increase to the amount originally claimed in his petition and the defendant insisting that the judgment be reversed in toto.
As defendant does not complain, in this court, of the overruling of his plea of *Page 713 
res adjudicata, nor does he present any argument or reason relating thereto, this plea is considered as abandoned.
The first question presented is whether or not the plaintiff has a right to take advantage of defendant's warranty contained in the cash deed to Newman and Middleton, and particularly that special warranty quoted in the first part of this opinion. In that special warranty, Jones bound himself to defend any suit which might be instituted by any one against his vendees; and in the event of his vendees being cast, he further obligated himself to pay all the costs attendant to the suit or all damages which might be decreed against his vendees. This is a right of action which his vendees had; his vendees were defendants in the suit brought by the lumber corporation. We see no legal reason why Newman and Middleton could not sell this right of action, together with all of their interest in the bridge, to their co-defendants and vendee, Field, and permit Field to take over the entire defense of the suit, relieving them of further responsibility in reference to the bridge and suit. This was not a sale of such a litigious right as is reprobated by law, but the sale of a right flowing from a binding agreement. Field has the same right which his vendors, Newman and Middleton, had against Jones. The exception of no right or cause of action was therefore properly overruled.
The next question presented is the ownership of the bridge. Jones claims the ownership of this bridge because he contends that the bridge was located on his land. He owned a forty-acre tract, being the S.E. 1/4 of S.W. 1/4 of Sec. 13, Tp. 1, S.R. 10 West. The lumber corporation owned the adjoining forty acres to the east, being the S.W. 1/4 of S.E. 1/4 of the same section, range, etc., and claimed in its suit that the bridge was on its property, claiming the ownership by virtue thereof.
The plaintiff offered the testimony of a civil engineer, and lay witnesses to the effect that the bridge was located on the lumber corporation tract of land, while the defendant likewise offered testimony of lay witnesses and a surveyor who testified that the bridge was located on defendant's property. The trial judge being dissatisfied with the surveys and lay testimony relative to the division line between the two properties and the location of the bridge, appointed a disinterested surveyor, who made a survey for the court. This surveyor found that the bridge in contest was located on the lumber corporation's tract of land. The trial judge came to the conclusion that the bridge did belong to the lumber corporation and not to the defendant. Such was also the conclusion of the trial judge in the suit of the lumber corporation against plaintiff and his vendors. We deem it unnecessary to go into details with reference to the survey made by the various surveyors who attempted to locate the line between the S.W. 1/4 of S.E. 1/4 and S.E. 1/4 of S.W. 1/4 of this section so as to determine on whose land the bridge was located. Suffice it to say that after a careful consideration of the evidence, both in this case and in the lumber corporation case, we find no manifest error in the conclusion of the trial judges, but to the contrary, we are of the opinion that the bridge was located on the land of Kirby Lumber Corporation, as found by the trial judge.
Since the bridge was located on the land of the lumber corporation and belonged to it, Jones sold something that did not belong to him. He not only gave a general warranty to his purchasers as contained in all sales, but, in accordance with Civil Code Article 2503, he gave a special and additional warranty as quoted supra. Besides being liable under this special warranty, he is also liable, under Civil Code Article 2506, on his general warranty, to his purchasers, not only to restore the price, but also to reimburse the purchasers all losses and damages sustained by them by reason of being deprived of the property.
As plaintiff has the right to compel defendant to comply with the warranties which he made in the deed to Newman and Middleton, there only remains the question as to the extent and amount for which defendant is liable.
The trial judge rendered a judgment in the lumber corporation suit against plaintiff and his co-defendants, plaintiff's vendors and defendant's vendees, in solido, for $1,000, as the value of the bridge. The plaintiff has conclusively proven that he paid this amount in satisfaction of the judgment and retained the material and the remaining portion of the bridge. It then became his property in full ownership. In other words, he was condemned to pay this amount to be kept from eviction of the property. In the case of Filhiol v. Cobb, 36 La.Ann. 792, it was held that when a vendee purchases a superior title to avoid dispossession, *Page 714 
the vendee can recover the sum thus paid. This case is very similar to the case at bar.
Plaintiff has also proven that he expended the sum of $115 as attorney's fees in the defense of the lumber corporation suit; in addition thereto, he has conclusively proven the following expenditures incurred by virtue of the corporation suit: $75 as surveyor's fees and helpers in surveying of the lands; $180 in attending court and looking after the defense of the suit, thus making an aggregate total of $1,370.
He has failed to prove wherein he paid any interest and/or costs. He is not entitled to any claim for any loss of part of the material, because this material was in his possession as owner; the same can be said as to his claim of $90 which he claims to have paid to a watchman; not only that, but he has failed to definitely prove any definite loss of material or the payment to a watchman; likewise he has failed to prove any loss of profits. These claims are disallowed.
The lower court having granted plaintiff a judgment of $1,152.49, and since we are of the opinion that the facts and the law justify an award of $1,370, or an increase in the said judgment to the extent of $217.51, it necessarily follows that the judgment has to be amended.
For these reasons, the judgment appealed from is amended by increasing the amount awarded from $1,152.49 to $1,370, and as thus amended the judgment is affirmed, the defendant to pay all costs.
LE BLANC and OTT, JJ., concur.